IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Jackie Strong, | ) | Civil Action No. 8:10-cv-00357-CMC-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for supplemental security income ("SSI"). For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded pursuant to 42 U.S.C. § 405(g) for an award of benefits.[2]

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

Plaintiff protectively filed a claim for SSI[3] on November 28, 2005, alleging disability as of January 20, 1997. [R. 8, 117–21.] The claim was initially denied on March 17, 2006 [R. 59, 61–62], and was denied on reconsideration by the Social Security Administration ("the Administration") on May 16, 2006 [R. 60, 68–71]. Plaintiff filed a request for hearing [R. 77], and on March 6, 2008, Administrative Law Judge ("ALJ") Richard Vogel held a hearing on Plaintiff's claim [R. 17–52].

On April 15, 2008, the ALJ issued his decision that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act ("the Act"). [R. 8–16.] Following his review of the evidence, the ALJ found Plaintiff had the following combination of severe impairments: chronic obstructive pulmonary disease ("COPD"), degenerative disc disease, depression, and borderline intellectual functioning [R. 10, Finding 2], but the impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (part A) [R. 10, Finding 3]. The ALJ also found Plaintiff retained the residual functional capacity to perform unskilled light work with the following limitations: ability to sit/stand at will; no climbing or crawling; only occasional crouching and stooping; avoid concentrated exposure to lung irritants; no exposure to industrial hazards; low stress work environment with only occasional decisionmaking or changes in the work setting; and functional illiteracy. [R. 12, Finding 4.] With these restrictions, the ALJ found Plaintiff was unable to perform any past relevant work [R. 14, Finding 5], but jobs existed in significant numbers in the national economy Plaintiff could perform [R. 15, Finding 9].

---

[3]Plaintiff appears to have actually filed a claim for disability insurance benefits under Titles II and XVIII of the Social Security Act ("the Act") [R. 117, 61], but Plaintiff was not eligible for such benefits because he failed to meet the insured status requirements of the Act [R. 122; *see* 42 U.S.C. § 423(a)(1)(A), (c)(1)].

On December 23, 2009, the ALJ's findings became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review of the hearing decision.  [R. 1–3; 20 C.F.R. § 416.1481.]  Plaintiff filed this action for judicial review on February 15, 2010.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends that the Commissioner erred by failing to find Plaintiff met Listing 12.05C.  The Commissioner contends the ALJ's decision was supported by substantial evidence.

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "'allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the

[Commissioner's] designate, the ALJ),'" not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

4

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the plaintiff's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the plaintiff disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920.

7

Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Id.* If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, 20 C.F.R. §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. 20 C.F.R. §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§

8

423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

C.    ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

D.    ***Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the

9

claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g);  *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50

---

[5]Residual functional capacity is "the most [a claimant] can do despite [his] limitations."  20 C.F.R. § 404.1545(e)

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a.  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  *Id.*

("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

11

III.     **Treating Physicians**

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record.  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)).  If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence.  *Craig*, 76 F.3d at 590.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the

treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d), 416.927(d).  In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(e), 416.927(e).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make

13

a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig,* 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id*. (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman*, 829 F.2d at 518.  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably

be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31, 898-02 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996), which is consistent with SSR 90-1p. SSR 96-7p provides, "If an individual's statements about pain or other

15

symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *See also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### Listing 12.05

Plaintiff complains the ALJ's rationale for rejecting a finding that Plaintiff meets Listing 12.05C of the listings[7] is not supported by substantial evidence. [Doc. 15 at 20.] The Court agrees.

---

[7] The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911 and 416.925.

16

To determine whether a claimant's impairments meet or equal a listed impairment, the ALJ identifies the relevant listed impairments and compares the listing criteria with the evidence of the claimant's symptoms. *See Cook*, 783 F.2d at 1173 (stating that without identifying the relevant listings and comparing the claimant's symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial evidence to support the determination"); *Beckman v. Apfel*, No. WMN-99-3696, 2000 WL 1916316, at *9 (D. Md. Dec. 15, 2000) (unpublished opinion) ("In cases where there is 'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing." (quoting *Cook*, 783 F.2d at 1172)).

### *Criteria of Relevant Listing*

Listing 12.05 reads as follows:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> Or
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> Or

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

Or

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

To meet Listing 12.05, a claimant must satisfy the "diagnostic description" in the introductory paragraph and any one of the four sets of criteria—A, B, C, or D. *Id.* § 12.00A. The diagnostic description describes mental retardation as "significantly sub-average general intellectual functioning with deficits in adaptive functioning." *Id.* § 12.05. The Administration "has never adopted a standard of measurement for the term 'deficits in adaptive functioning' in the capsule definition of Listing 12.05." *Wall v. Astrue*, 561 F.3d 1048, 1073 (10th Cir. 2009) (Holloway, C.J., dissenting). The Administration has noted, however, that the definition of mental retardation in the listings is "consistent with, if not identical to, the definitions of [mental retardation] used by the leading professional organizations."[8] Technical Revisions to Medical Criteria for Determinations of Disability,

---

[8]The Administration explained that, in the United States, each of the four major professional organizations has its own definition. Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20,018-01, at 20,022 (Apr. 24, 2002). However, although each requires "significant deficits in intellectual

18

67 Fed. Reg. 20,018-01, at 20,022 (Apr. 24, 2002).  *But see Cox v. Astrue*, 495 F.3d 614, 618 n.4 (8th Cir. 2007) (noting that "the medical standard for mental retardation is not identical to the legal standard").  Medical professional organizations have stated that deficits in "adaptive functioning" can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.  *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 41 (4th ed., Text Revision 2000) [hereinafter DSM-IV-TR]) (noting the similarity between the American Association on Mental Retardation and the American Psychiatric Association's definitions of mental retardation[9]).  Further, to satisfy the "diagnostic description" in the introductory paragraph, the claimant's deficits in adaptive functioning must have "initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."[10]  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

---

functioning," which is evidenced by low IQ scores, "age of onset and the method of measuring the required deficits in adaptive functioning differ among the organizations."  *Id.*  The Administration has discussed the definitions utilized by the American Psychiatric Association but has specifically stated that it endorses no organization's methodology over another.  *Id.*  In fact, when the Administration revised the listings in 2002, it declined a proposal to incorporate the American Psychiatric Association definition of mental retardation into Listing 12.05.  *Id.*  The Administration's definition "establishes the necessary elements, while allowing use of any of the measurement methods recognized and endorsed by the professional organizations."  *Id.* In this case, the Court refers to the definition in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders*.

[9]The Fourth Circuit has approved the use of the American  Association of Mental Retardation's standards for measuring adaptive skills in reviewing the denial of a writ of habeas corpus under 28 U.S.C. § 2254.  *See Green v. Johnson*, 515 F.3d 290, 302 (4th Cir. 2008), *cert. denied*, 128 S. Ct. 2999 (2008) (finding Virginia Supreme Court's determination that the petitioner had failed to show he was mentally retarded was not contrary to clearly established federal law).

[10]Medically, a diagnosis of mental retardation requires a finding that the patient's intellectual limitations began in childhood.  DSM-IV-TR, *supra*, at 54.

19

### The ALJ's Decision

Here, the ALJ never mentioned Listing 12.05 by name, nor did he list the elements Plaintiff needed to prove to satisfy the listing. The ALJ did not even discuss Plaintiff's IQ score in section 3 of the decision—where the ALJ discussed whether Plaintiff had an impairment or combination of impairments that met or medically equaled a listed impairment.[11] In the discussion generally related to mental retardation, the ALJ found "no evidence of mental retardation prior to age 22 or deficits in adaptive functioning." [R. 11.] Specifically, the ALJ noted:

> The claimant was married, has children, has a new girlfriend and has worked at substantial gainful activity levels over the years. Consequently, the claimant does not have a medically determinable impairment of mental retardation. However, the record does suggest the claimant functions at a level below average, possibly in the borderline area of cognitive functioning (i.e., Exhibit 3F). While the test results of the consultative examination are not deemed reliable, other evidence, including the claimant's limited education and functional illiteracy, suggest borderline intellectual functioning. In the light most favorable to the claimant, I find him to be functionally illiterate and operating at the borderline level of intellectual functioning.

[R. 11–12.]

The ALJ's discussion, quoted above, suggests the ALJ may have considered whether Plaintiff satisfied Listing 12.05. However, he never *discussed* whether Plaintiff satisfied the requirements of Listing 12.05. Moreover, the ALJ stated he considered Listings 12.02 and 12.04; the ALJ never mentioned Listing 12.05 in his decision. [*See* R.

---

[11]As stated above, subsections B, C, and D of Listing 12.05 require an IQ score within certain ranges. Although the ALJ listed Plaintiff's IQ score from consultative testing in the discussion of Plaintiff's residual functional capacity, the ALJ mentioned the IQ score only to find it unreliable and never made a specific finding as to what Plaintiff's IQ score is. [*See* R. 13–14.] Interestingly, the parties focus heavily on IQ scores in their briefs; however, a review of the ALJ's decision demonstrates the ALJ did not reach the question of IQ score in his discussion of whether Plaintiff's impairments met or equaled a listing.

20

10–12 (finding Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . " and specifically considering listings 12.02 and 12.04).]

The ALJ's failure to expressly consider and discuss his findings regarding whether Plaintiff satisfied Listing 12.05 would be sufficient reason to remand to the ALJ to properly consider the issue. The decision fails to identify the listing, to explain the standard to be applied, and to compare Plaintiff's symptoms to the requirements of Listing 12.05, except in a very summary way. *See Cook*, 783 F.2d at 1173 (remanding in part because it was "simply impossible to tell whether there was substantial evidence to support the determination" when the ALJ's decision failed to identify the relevant listed impairment and failed to compare each of the listed criteria to the evidence of the plaintiff's symptoms). When substantial evidence supports a finding of disability, however, the Court may exercise its discretion to remand for an award of benefits.

**Remand for Additional Proceedings or for an Award of Benefits**

Plaintiff argues the case should be remanded for payment of benefits because additional proceedings would serve no useful purpose. [Doc. 15 at 31–32.] The Court agrees.

Whether to remand for additional proceedings or for an award of benefits is generally approached on a practical level, and the decision rests within the sound discretion of the district court. *Smith v. Astrue*, No. 3:10-66, 2011 WL 846833, at *3 (D.S.C. Mar. 7, 2011) (citing *Edwards v. Bowen*, 672 F. Supp. 230, 237 (E.D.N.C. 1987)). An award of benefits is more appropriate when further proceedings would serve no useful purpose. *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1985). Likewise, an award of

benefits is appropriate when substantial evidence indicates the claimant is disabled, and the weight of the evidence indicates a remand would only delay the receipt of benefits while serving no useful purpose or a substantial amount of time has already passed. *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir. 1984); *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir. 1982). Further, an award of benefits is appropriate when the Commissioner has had an opportunity to develop the record on an outcome-determinative issue and has failed to produce substantial evidence, *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983); *Tennant,* 682 F.2d at 710–11; *Edwards*, 672 F. Supp. at 237, or where "there is not the slightest uncertainty as to the outcome" and additional proceedings "would be an idle and useless formality," *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969); *see also Barry v. Bowen*, 862 F.2d 869, 1988 WL 124873, at *2 (4th Cir. 1988) (unpublished opinion) (citing *NLRB*, 394 U.S. at 766 n.6). On the other hand, additional proceedings are appropriate where they could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

The Court has reviewed the record and the parties' filings and finds reopening the record would serve no useful purpose. Plaintiff applied for benefits in November 2005, alleging an onset of disability in January 1997, indicating a substantial amount of time has passed since Plaintiff applied for benefits. Further, substantial evidence in the record as a whole indicates that Plaintiff is disabled in accordance with Listing 12.05B, as discussed in detail below, and a remand would only delay the receipt of benefits while serving no useful purpose because there is no additional information to be developed in the record to remedy any defects. Accordingly, in this case, an outright award of benefits is appropriate.

22

**Listing 12.05B**

The Court first addresses the ALJ's findings regarding the diagnostic description in the introductory paragraph of Listing 12.05.

### *Manifestation During the Developmental Period*

The ALJ summarily stated that there was no evidence of mental retardation prior to age 22. This finding is not supported by substantial evidence; rather, substantial evidence supports a finding of manifestation of mental retardation during Plaintiff's developmental period.

The Fourth Circuit has recognized that the regulations "expressly define mental retardation as denoting 'a lifelong condition.'" *Branham*, 775 F.2d at 1274 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(B)(4)). A claimant does not have to present evidence of an IQ test before age 22 to be found mentally retarded under Listing 12.05. *See id.* (stating that "there may be many reasons why an individual would not have had the opportunity or need to have a formal intelligence quotient test until later in life"). Evidence of illiteracy despite a claimant's education supports a finding that the claimant's mental retardation occurred before age 22. *Turner v. Bowen*, 856 F.2d 695, 699 (4th Cir. 1988). Additionally, a diagnosis of mental retardation supports a finding that Plaintiff's mental retardation occurred before age 22. *See* DSM-IV-TR, *supra*, at 47 (stating that a diagnosis of mental retardation requires an onset before age 18). Moreover, "in the absence of any evidence of a change in a claimant's intelligence functioning, it *must be assumed* that the claimant's IQ remained relatively constant." *Luckey v. Dep't of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989) (citing *Branham*, 775 F.2d at 1274) (emphasis added).

23

The record shows Plaintiff was repeatedly held back and was in special education from the third grade until he finally dropped out of school after twice being held back in the eighth or ninth grade. [R. 20, 155, 246, 270, 279.] Plaintiff testified he never obtained his GED. [R. 20–21.] Importantly, the ALJ found Plaintiff was functionally illiterate after approximately 11 years of schooling. [*See* R. 11 (finding that testing shows Plaintiff is functionally illiterate and attributing Plaintiff's illiteracy to a "general inability to read"); R. 12 (finding Plaintiff's functional illiteracy was a limitation on Plaintiff's residual functional capacity); R. 14 (noting that Dr. Fishburne found Plaintiff functionally illiterate "despite the level of his education" and that Plaintiff's work history does not contradict this finding).] Pursuant to *Turner*, 856 F.2d at 699, Plaintiff's functional illiteracy despite approximately eleven years of schooling is a manifestation of mental retardation occurring before age 22.[12] Accordingly, the ALJ's finding that there was *no* evidence of manifestation before age 22 is not supported by substantial evidence; the Court finds substantial evidence supports a finding of manifestation before age 22.

### *Adaptive Deficits*

The ALJ also stated there was no evidence of deficits in adaptive functioning, noting Plaintiff was "married, has children, has a new girlfriend and has worked at substantial gainful activity levels over the years." [R. 11–12.] This finding also is not supported by

---

[12]The Commissioner contends this case is distinguishable from *Turner* and illiteracy alone should not demonstrate Plaintiff meets the listing for mental retardation. [Doc. 16 at 6.] However, at this stage of the analysis, the Court does not find that Plaintiff meets the *listing* for mental retardation but, instead, that Plaintiff's illiteracy indicates Plaintiff's subaverage general intellectual functioning and deficits in adaptive functioning, as discussed below, manifested before age 22 as required in the introductory paragraph of Listing 12.05.

substantial evidence, and the record supports a finding that Plaintiff had two or more deficits in adaptive functioning.

The DSM-IV-TR defines mental retardation as a combination of "significantly sub-average intellectual functioning (an IQ of approximately 70 or below)" and "significant limitations in adaptive functioning" in at least two skill areas.  DSM-IV-TR, *supra*, at 41. These skill areas include communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.  *Id.*

Francis J. Fishburne, Ph.D., found specific diagnostic implications of moderate mental retardation under DSM-IV-TR AXIS II[13] and a Global Assessment of Functioning

---

[13]The multiaxial system of the DSM-IV-TR

> involves an assessment on several axes, each of which refers to a different domain of information that may help the clinician plan treatment and predict outcome.  There are five axes included in the DSM-IV multiaxial classification:
>
> | | |
> |---|---|
> | Axis I | Clinical Disorders |
> | | Other Conditions That May Be a Focus of Clinical Attention |
> | Axis II | Personality Disorders |
> | | Mental Retardation |
> | Axis III | General Medical Conditions |
> | Axis IV | Psychosocial and Environmental Problems |
> | Axis V | Global Assessment of Functioning |
>
> The use of the multiaxial system facilitates comprehensive and systematic evaluation with attention to the various mental disorders and general medical conditions, psychosocial and environmental problems, and level of functioning that might be overlooked if the focus were on assessing a single presenting problem.  A multiaxial system provides a convenient format for organizing and communicating clinical information, for capturing the complexity of clinical situations, and for describing the heterogeneity of individuals presenting with the same diagnosis.  In addition, the multiaxial system promotes the application of the biopsychosocial model in clinical, educational, and research settings.

DSM-IV-TR, *supra*, at 27.

("GAF") score of 40.[14]  [R. 274.]  Based on the definition of mental retardation in DSM-IV-TR, the very diagnosis of mental retardation by Dr. Fishburne includes a finding of at least two deficits in adaptive functioning.  *See* DSM-IV-TR, *supra*, at 41.

Moreover, Dr. Fishburne's finding of spelling and reading skills at first and second grade levels, respectively [R.273], demonstrates a deficit in "functional academic skills," one of the skill areas under the DSM-IV-TR definition of mental retardation.  Additionally, that Plaintiff's girlfriend tells him when to bathe [R. 11] and Dr. Fishburne's recommendation that another responsible adult should manage Plaintiff's funds if he obtains benefits [R. 274] could support a finding of deficits in "self-care" and "home living," two additional skill areas under the DSM-IV-TR definition of mental retardation.  Further, the ALJ found Plaintiff to be functionally illiterate consistent with his inability to read.  [R. 11.]  Functional illiteracy in and of itself is a deficit in adaptive functioning.  *Davis v. Astrue*, No. 2:07-1621, 2008 WL 1826493, at *4 (D.S.C. Apr. 23, 2008) (citing DSM-IV-TR, *supra*, at 40).  Accordingly, the Court cannot find that the ALJ's finding of *no* evidence of deficits in adaptive functioning is supported by substantial evidence, and the Court finds there is substantial evidence to support a finding of at least two deficits in adaptive functioning.

---

[14]A GAF score of 40 indicates

> [s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

DSM-IV-TR, *supra*, at 34.

### Subsection 12.05B Requirement

The specific requirement of subsection 12.05B is a "valid verbal, performance, or full scale IQ of 59 or less."[15]  In the discussion of Plaintiff's residual functional capacity, the ALJ found that, although results of the consultative testing indicated Plaintiff had a full-scale IQ score of 49, this score was inconsistent with Plaintiff's activities of daily living and work history.  [R. 14.]  The ALJ relied on the report of non-examining clinician Judith Von, Ph.D., in which Dr. Von opines Plaintiff's activities and work history are inconsistent with an IQ score of 49, and on the vocational expert's testimony that Plaintiff's previous occupations were at a semi-skilled level, making the IQs alleged by Dr. Fishburne not representative of Plaintiff's ability.  [R. 14.]  To the extent the ALJ relied on the vocational expert's testimony about Plaintiff's previous occupations, it is not the job of the ALJ to determine whether IQ scores are legitimate.  *See Jackson v. Astrue*, No. 8:08-2855, 2010 WL 500449, at *5 (D.S.C. Feb. 5, 2010) (finding the ALJ improperly interpreted evidence when the ALJ found the plaintiff's daily activities did not comport with her IQ scores); *see also Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("[A]n ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so.").  Additionally, reliance on a claimant's work history to reject IQ scores is rejected in the

---

[15]Plaintiff contends he meets the requirements of subsection 12.05C—an IQ between 60 and 70 and "a physical or other mental impairment imposing an additional and significant work-related limitation of function—because even if the Court found the ALJ's finding Plaintiff's IQ score was unreliable to be supported by substantial evidence, Plaintiff would still meet the requirements of subsection 12.05C with an IQ score a full 20 points higher because the other impairment requirement is met. [Doc. 15 at 30, n.4.]  While the Court agrees with Plaintiff that he satisfies the second prong of subsection 12.05C because the ALJ found Plaintiff unable to return to his past relevant work, *see Flowers v. Dep't of Health & Human Servs.*, 904 F.2d 211, 214 (4th Cir. 1990) (citing *Branham v. Heckler*, 775 F.2d 1271, 1273 (4th Cir. 1985)) ("In this circuit, we follow the rule that if a claimant cannot return to his past relevant work, he has established a work-related limitation of function which meets the requirements of § 12.05(C)."), the Court finds the ALJ improperly discredited Plaintiff's IQ scores and, accordingly, the only IQ scores in the record satisfy the requirements of subsection 12.05B.  Accordingly, the Court addresses Listing 12.05B.

Fourth Circuit.  *See Luckey*, 890 F.2d at 669 (quoting *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987)).  To the extent the ALJ relied on the opinion of Dr. Von, a non-examining clinician, over Dr. Fishburne, an examining clinician, "[g]enerally, [the Commission] gives more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]."  20 C.F.R. § 404.1527(d)(1); *see also Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) ("This Court has said that the testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when totally contradicted by the other evidence in the record.  However, we have also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record.  Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, an ALJ's determination coming down on the side on which the non-examining, non-treating physician finds himself should stand." (internal citations omitted)).  Here, the ALJ improperly relied on the opinion of a non-examining clinician and the ALJ's own opinion based on testimony from the vocational expert about Plaintiff's prior work to determine that IQ scores were unreliable when the record contained no inconsistent testing results.

Additionally, the Court notes the ALJ's decision contains internally inconsistent findings.  For example, the ALJ assigned no weight to Dr. Fishburne's finding regarding Plaintiff's IQ score from consultative testing [R. 14], relying on the State Agency opinion to which the ALJ gave only limited weight [R. 13] to discount the IQ score [*id.*], but then gave moderate weight to the remainder of Dr. Fishburne's opinion [R. 14].  The only portion of Dr. Fishburne's opinion the ALJ discounted was the IQ scores.  The ALJ failed to explain his reasoning for assigning inconsistent weights to the various opinions or for assigning

28

different weights to portions of the same opinion, leaving the Court to guess at the ALJ's reasoning. *See Vitek*, 438 F.2d at 1160 ("The statute puts a limitation on the court's power of review, but there is a concomitant duty on the Secretary to explicate the grounds of his decision.") Moreover, the ALJ used an opinion he found entitled to limited weight to discount a portion of an opinion that was otherwise entitled to moderate weight. *See Binion on Behalf of Binion v. Chater*, 108 F.3d 780, 788–89 (7th Cir. 1997) (reversing a lower court decision and stating that "[t]he ALJ in this case, however, seemed to pick and choose among the pieces of evidence"); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (citing *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984)) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."). Accordingly, the ALJ's findings are internally inconsistent.

The record evidence shows that, on the Wechsler Adult Intelligence Scale - Third Edition, Plaintiff scored a Verbal IQ of 53, a Performance Scale IQ of 52, and a Full Scale IQ of 49. [R. 274.] These scores alone meet the IQ requirement of subsection 12.05B. Dr. Fishburne also noted that he was 95% confident Plaintiff's IQ fell within the range of 46 to 54. [R. 272.] There are no conflicting IQ scores or conflicting reports from other *examining* clinicians. Additionally, the report of non-examining clinician, Dr. Von, contains errors. For example, Dr. Von indicates that Plaintiff told Dr. Fishburne Plaintiff did not have a drivers license. [R. 283.] However, a review of Dr. Fishburne's report indicates that Plaintiff told Dr. Fishburne Plaintiff had a drivers license and had last driven the night before the consultative evaluation. [R. 271.] Dr. Von also states that having a girlfriend, using food stamps, and living independently are inconsistent with an IQ of 49. [R. 283.]

However, Dr. Fishburne was aware of these activities and did not indicate the activities were inconsistent with the IQ score.  [R. 271.]  Additionally, Dr. Von's assessment that Plaintiff lived independently is qualified by Plaintiff's indication to Dr. Fishburne that his girlfriend tells Plaintiff when to bathe and does the shopping, cooking, and cleaning.  [R. 271.]  Accordingly, the ALJ erred in using Dr. Von's non-examining opinion to discredit the IQ scores found by examining clinician Dr. Fishburne, and substantial evidence in the record as a whole indicates that Plaintiff is disabled in accordance with Listing 12.05B.

## **CONCLUSION**

Wherefore, based on the foregoing, the Court recommends that the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be REMANDED to the Commissioner for an award of benefits to Plaintiff based on a disability commencing January 20, 1997.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

June 27, 2011
Greenville, South Carolina

30